**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**APRIL GLADNEY**                                                                        **PLAINTIFF**

**vs.**                                                    **CIVIL ACTION NO. 1:11CV28-SAA**

**MICHAEL ASTRUE,**
**Commissioner of Social Security**                                         **DEFENDANT**

## <u>MEMORANDUM OPINION</u>

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff April Gladney for a period of disability and disability insurance benefits (DIB) under Section 216(I) and 223 of the Social Security Act and for supplemental security income payments under Section 1614(a)(3) of the Act.  Plaintiff protectively applied for benefits on August 27, 2007, alleging that she became disabled on August 20, 2007 due to breast cancer, complications arising out of her treatment for the cancer including lymphedema, and arthritis.  Docket  5, p. 100-104.  The plaintiff's claim was denied initially and on reconsideration.  *Id.* at 51-54, 63-66.  Plaintiff timely requested a hearing on April 28, 2008 (*Id.* at 67) and testified at the administrative hearing that was held on August 3, 2009.  Docket 5, p.24-49.  The ALJ issued an unfavorable decision on September 2, 2009.  *Id.* at 11-23.  The Appeals Council denied plaintiff's request for a review on December 8, 2010.  *Id.* at 6-9.  The plaintiff timely filed the instant appeal from the Commissioner's most recent decision, and it is now ripe for review.

Because both parties have consented to have a magistrate judge conduct all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

# I. FACTS

The plaintiff was born on October 11, 1967 and was forty-one years old at the time of the hearing. Docket 5, p. 42. She has a twelfth grade education. *Id.* at p. 43. Her past relevant work was as a sewing machine operator and a waitress. *Id.* at pp. 21, 167. She contends that she became disabled on August 20, 2007 when she began treatment for breast cancer and then experienced severe side effects as a result of the treatment. *Id.* at 12, 14, 31, 102. Plaintiff also alleges that arthritis in her right arm is disabling. The ALJ rejected her claims of disability, concluding that even though the plaintiff had severe impairments and could not perform her past relevant work, there nevertheless were jobs which existed in significant numbers in the national economy which plaintiff could perform. Consequently, plaintiff was not disabled.

Plaintiff claims that the ALJ erred by:

1. Failing to consider plaintiff's impairments, specifically her lymphedema, at Step 2.

2. Not finding plaintiff disabled because she meets Listing 13.10.[1]

3. Not affording proper weight to the opinions of plaintiff's treating physician and the agency consulting physician.

4. Assessing plaintiff's RFC without support from the medical evidence.

5. Not finding plaintiff disabled at Step 5 based upon the testimony of the VE in response to a hypothetical that was supported by the medical evidence.

Docket 9, p.1. Although plaintiff raises these five issues as grounds for appeal, the court will focus on the fact that the ALJ should have found plaintiff disabled because the proper

---

[1] 20 C.F.R. Part 404, Subpart P, App. 1, §13.10.

hypothetical question posed to the VE supports a finding of disabled at Step 5.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2]  The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3]  First, plaintiff must prove she is not currently engaged in substantial gainful activity.[4]  Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[5]  At step three the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6]  If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and

---

[2]*See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[3]*Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

[4]20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[5]20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[6]20 C.F.R. §§ 404.1520(d), 416.920(d) (2010).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925 (2003).

[7]20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

past work experience, that she is capable of performing other work.[8]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard.  *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999); citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983).  The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11]  The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted).  Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side.  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The court's inquiry is whether the record, as a whole, provides sufficient

---

[8]20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[9]*Muse*, 925 F.2d at 789.

[10]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[11]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

Plaintiff argues that the ALJ's RFC was not supported by any medical opinion in the record, rendering erroneous his hypothetical to the vocational expert ("VE") and his ultimate decision that plaintiff is not disabled. She contends the ALJ erred in the final step of the evaluation process as he relied upon his own lay opinion that plaintiff could lift or carry 20 pounds on an occasional basis. Docket 9, p. 9-10. As was the case in *McManus v. Astrue*, Civil Action No. 1:10cv280, N.D. Miss., Eastern Division, the Commissioner completely fails to even acknowledge this argument. Again, the Commissioner's failure to address this point means that the court, whose burden to review the record is already an onerous one, has been forced to expend additional time minutely searching the record to determine if there is indeed support for the ALJ's 20-pound finding. Such a detailed search should have been obviated by the Commissioner's either pointing out where such support can be found in the record or conceding that no such support exists. Where there is no such support, and the error is so fundamental, the Commissioner should voluntarily agree to remand for reconsideration rather than require that the court do the work for him.

While ignoring this winning argument, the Commissioner argues that one of plaintiff's treating physicians, Dr. Jimmy Hamilton, opined in his Medical Source Statement that plaintiff's breast cancer medically equaled Listing 13.10 and that this opinion is at odds with his medical

records.  Docket 10, p. 7-8.  In an effort to defend the ALJ's decision to afford Dr. Hamilton's opinions "minimal weight," however, the Commissioner effectively highlights the fact that the ALJ took issue with the opinions of the physicians who examined plaintiff, including the agency consulting physician, and chose instead to make his own determination as to plaintiff's impairments and her RFC.[12]

The record evidence includes the Medical Source Statement from plaintiff's surgeon Dr. Hamilton (Docket 5, pp. 320-25), a report and Medical Source Statement from a consultative state agency examiner Dr. Perry Duggar (Docket 5, pp. 365-69), and a one-page Medical Consultant Review from non-examining state agency consultant Dr. Robert Culpepper.  Docket 5, p. 301.  Dr. Hamilton did not provide any limitations for plaintiff, but he did indicate that plaintiff suffered from breast cancer and met all of the requisite elements of Listing 13.10. Docket 5, p. 320-25.  Dr. Duggar's Medical Source Statement limited plaintiff to occasionally lifting less than 10 pounds, never climbing and only occasionally balancing, stooping, crouching, kneeling or crawling.  Docket 5, p. 370.  Dr. Duggar also opined that plaintiff's reaching and handling are limited due to the lymphedema and arthritis in her right arm.  *Id.*

The ALJ did everything but actually call plaintiff a liar in his analysis of her RFC. Docket 5, p. 20.  He stated that "claimant testified incredibly that she can stand for only three to five minutes . . . "; "[s]he testified incredibly that she can walk for only 45 seconds . . ."; [t]he claimant falsely told Dr. Duggar of multi-year, multi-joint arthritis pain . . ."; and "claimant

---

[12] Although the court is deciding this appeal on other grounds, the court feels compelled to note the ALJ's blatant violation of the requirement that before he discounts a treating or examining physician's opinion for being incomplete or inconsistent, he should re-contact that physician to seek clarification of the grounds for the stated opinion.  *Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); 20 CFR 404.1512(e); 20 CFR 416.920(e).

testified incredibly that she cannot use her right hand for gripping or for fine manipulation." The ALJ further found that "Dr. Duggar reported entirely to the contrary pursuant to his physical examination,"and that "the claimant presented entirely successful bilateral hand manipulation" during her examination by Dr. Duggar. *Id.*

However, the court's review of the record and objective evidence establishes that it is, instead, the ALJ's findings which are "entirely contrary" to the doctor's actual findings and opinions. Dr. Duggar's Report indicates that flexion of plaintiff's right elbow is 0 to 25 degrees compared to 0 to 160 degrees on the left elbow. Docket 5, p. 367. He further noted that her right wrist extension is to 70 degrees and flexion to 80 degrees compared to 180 degrees on her left arm. *Id.* Plaintiff experienced pain in her right hand when prompted to grip and arm and finger squeeze was a 2/5 on the right side. Docket 5, p. 367. Her grip strength on the right was 2, 4, and 4 on the right compared to 21, 20, 22 on the left. Dr. Duggar was not even able to measure plaintiff's right extremities because of the pain and edema on plaintiff's right upper extremity. *Id.* at 68. Certainly these objectively supported medical findings support plaintiff's testimony that she cannot use her right hand for gripping or fine manipulation. Further, the fact that plaintiff does not have a multitude of documentation to support her complaint of arthritis pain does not necessarily mean that she lied to Dr. Duggar. In fact, admission records from Baptist Memorial Health Care dated April 9, 2009, identify arthritis as a complaint, and the following page notes a diagnosis of arthropathy, a disease of the joint. Docket 5, p. 401-02. It appears that the ALJ chose only those portions of Dr. Duggar's report and plaintiff's other medical records to rely upon and ignored the parts that did not support his ultimate conclusion.

The ALJ afforded "minimal weight" to the opinions of the only two physicians who had

examined plaintiff or her medical records and had provided Medical Source Statements concerning plaintiff's limitations. The ALJ stated that Drs. Hamilton and Duggar's findings were not supported by the record and objective medical evidence as a whole. Docket 5, p. 17-18. The ALJ afforded Dr. Culpepper's opinion as to length of plaintiff's impairment "some weight" even though Dr. Culpepper's one-page Review, prepared on February 26, 2008, does not appear to have considered all of plaintiff's medical treatment. His review states that plaintiff's last date of treatment was February 11, 2008.[13] Docket 5, p. 301. Dr. Culpepper did not provide any limitations, and there are no other limitations found in the record from which the ALJ could have plausibly derived his conclusion that plaintiff can lift 20 pounds occasionally and ten pounds frequently. Similarly, the ALJ's determination that plaintiff can "frequently perform other climbing, balancing, stooping, crouch, kneeling, and crawling" is unsupported by the record. Docket 5, p. 21.

Without doubt the responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), but in making this determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Nor may the ALJ establish physical limitations or the lack of such limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive

---

[13]Of course, plaintiff had received more medical treatment between Dr. Culpepper's review and the hearing in August of 2009.

when supported by substantial evidence, 42 U.S.C. 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nyugen v. Chater*, 172 F.3d at 35.

At the hearing, the ALJ posed a hypothetical to the VE and asked her to assume the limitations that were supported by the record, particularly Dr. Duggar's examination of the plaintiff. In the first hypothetical, the ALJ asked the VE to assume that plaintiff could occasionally or frequently lift ten pounds and perform pushing and pulling to the extent of ten pounds. He also limited her to "rarely engag[ing] in handling or feeling or reaching or pushing and pulling with her right upper extremity." Docket 5, p. 43. In response to this first hypothetical, the VE testified that plaintiff could not perform her previous work and no other jobs exist in significant numbers in Mississippi or the national economy which plaintiff could perform. *Id.* at 44.

The ALJ then posed a second hypothetical to the VE and asked her to assume that plaintiff "retains the ability to occasionally lift 20 pounds . . . [s]he can only occasionally engage in pushing and pulling with her right upper extremity. She can only occasionally engage in reaching with her right upper extremity." *Id.* at pp. 44-45. Based upon this hypothetical, the VE again testified that plaintiff could not perform her previous work and no other jobs exist in significant numbers in Mississippi and the United States which plaintiff could perform. *Id.* at 45. After questioning why no jobs exist which plaintiff could perform under hypothetical two, and being advised by the VE that the "occasional reaching and handing with the right upper extremity" eliminated light jobs that can be performed, the ALJ tweaked his hypothetical to eliminate all restrictions on feeling or handling. *Id.* It was only then that the VE testified, "there

would be a few [jobs], Your Honor, but it would substantially limit the number of light jobs."
*Id.* The ALJ asked the VE to identify two jobs, and it was upon this third hypothetical that the ALJ based his decision that plaintiff is not disabled.

Following the ALJ's questions to the VE, Mr. Parvin, plaintiff's attorney, posited a hypothetical to the VE that contained the limitations placed on plaintiff by state agency examiner Dr. Duggar and that was very similar to the ALJ's first hypothetical. Docket 5, pp. 47-48. In response to this fourth hypothetical, the VE testified that plaintiff would not be able to perform any jobs. *Id.* at 48.

The record does not support the ALJ's hypothetical that plaintiff could lift 20 pounds occasionally, but instead directly *contradicts* this hypothetical. Dr. Duggar concluded that plaintiff could only occasionally lift 10 pounds. Docket 5, p. 370. The court has examined the record and cannot locate any treating or examining physician who ever stated plaintiff was capable of lifting or carrying 20 pounds, either occasionally or frequently, despite the ALJ's inclusion of this requirement in the hypothetical to the VE. Moreover, despite the fact that there is no evidence in the record that plaintiff has no restrictions on feeling or handling, the ALJ nevertheless included this finding in his hypothetical.

As argued by plaintiff and established by the Fifth Circuit, "an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995). This appears to be exactly what the ALJ did in this case. In direct contradiction to both the medical evidence in the record and applicable case law, the ALJ established physician limitations without any medical proof to support those limitations and then reached an RFC which is based upon the VE's testimony as to plaintiff's

ability to work with those unsupported limitations.

The Fifth Circuit has ruled that a VE's testimony based upon a defective hypothetical question cannot constitute substantial evidence of a non-disability. *Boyd v. Apfel*, 239 F.3d 698 (5th Cir. 2001). Therefore, the undersigned finds that the ALJ did not satisfy his affirmative duty to "ensure that his decision is an informed decision based upon sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). In fact, the hypotheticals that are supported by the record result in a finding of disabled because plaintiff cannot perform her past work, and there are not jobs either in Mississippi or the national economy that plaintiff could perform. Docket # 5, p. 42-48. The court holds that the ALJ's decision was not supported by substantial evidence.

## IV. DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand or to grant benefits without further administrative review, the court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the claimant that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by a deserving plaintiff. SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129. In this case, the plaintiff has been very patient. She has been seeking benefits through the administrative processes for over four years.[14] The evidence in this case is clear. Plaintiff's treating physician noted that plaintiff has all of the requisite elements necessary to meet Listing 13.10, particularly once plaintiff's impairment of lymphedema is considered. Additionally, according to the VE, a substantial number of jobs do not exist either in Mississippi or the national economy that plaintiff could perform due to her limitations. Therefore, plaintiff is presumed disabled.

_____

[14] Plaintiff protectively filed her applications for benefits on August 27, 2007.

Accordingly, the court holds that because the evidence is conclusive, an award of benefits at this stage would be in the best interests of the plaintiff's health and welfare and will avoid further undue delay which would result upon remand for additional review. The court directs that this case be remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## V. PLAINTIFF'S REMAINING ARGUMENTS

Because the court has determined that the plaintiff is disabled under the Social Security Act, and this action is being remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act, the court need not address the merits of the plaintiff's remaining arguments at this time.

## VI. CONCLUSION

For the foregoing reasons, the court finds that the decision of the ALJ was not supported by substantial evidence, that a substantial number of jobs do not exist in Mississippi or the national economy which plaintiff can perform due to her limitations and plaintiff is entitled to benefits under the Social Security Act. This case is remanded for the sole purpose of determining the amount of benefits to be awarded. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 3rd day of November, 2011.


 /s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE